Thomas Dickers, J.
In this motion brought by defendant to suppress allegedly illegal evidence, the record reveals that defendant had been a “ stand-by” at Kennedy Airport while waiting his turn to board an airplane and to make his intended flight to Chicago.
In that time, he was at length designated as a “ selectee” by the supervising personnel in charge and control for the *577 purpose of undergoing a search for weapáiis, because, in their opinion, he seemed to fit within the framework of what they denominated as “ behavioral profile,” according to the standard set at the airport by the Bureau of Customs, such being a procedure aimed at detecting for identification suspicious persons, if any, who, being of a dangerous caliber, might be planning to board an airplane and likely to cause trouble.
Defendant, because he was dressed in a jacket studded with metal buttons, tripped the so-called “ magnetometer ”, a metal detecting machine that reveals possession of weapons on one’s person, a requirement to which all passengers had to submit for safety purposes as a protection for them while on flight, (it is. parenthetically noted here that defendant did neither say nor do anything to indicate either any consent or any refusal regarding the application of this form of procedure.) The result of this manner of reasonable frisk (CPL 140.50) up to this point had satisfied the inspecting officer that defendant was devoid of any weapons on his person.
On completion of the foregoing test, the officer then proceeded farther in his examination of defendant’s person. Eventually, it seems, when he reached defendant’s right leg, he happened to touch something there that felt like a “ Band-Aid ” situated underneath the right trouser leg. Whereupon, he suspected that that something was a hidden narcotic of some sort. His suspicion leaned towards confirmation when defendant lifted his trouser leg at the officer’s direction, and that something on inspection turned out to be a packet containing a small amount of white powder.
As to the attitude of defendant with respect to this procedure, his testimony shows that he had not given permission to make the subsequent search of his person, and that the only reason for his submitting to this search was that he believed he had no alternative but to submit to this kind of procedure when confronted by an officer in uniform and wearing a gun, after .being taken by the arm authoritatively by the officer to make the search. Consequently, it is defendant’s contention that the frisking of defendant’s person by the customs official amounted to a supererogation of authoritative duty, and so, was a trespass; therefore, he views it as a flagrant violation of his constitutional protection under the Fourth Amendment.
On the other hand, the People contend that the customs official had acted in a fully reasonable and lawful manner when he made the subsequent frisk of defendant’s person resulting in the discovery of what had eventually proved to be cocaine *578 enclosed in the packet. The underlying theory of the People, as the supporting factor of the risk is that frisking and searching for weapons were essential in order to safeguard the welfare of passengers on airlines. Their further contention is that airline passengers, waiting to board an airplane, are not in the same protective position as those in other places, so far as frisk and search are concerned. In other w'ords, the People mean to say that the airport is a public place and passengers are therefore subject to proper authoritative supervision.
It is undisputed that security agents have the power to frisk and search for weapons with respect to passenger service, by patting the outer garments of passengers before their boarding an airplane, and that, pursuant to the authority vested in them by virtue of section 902 of the Federal Aviation Act of 1958, as amended (U. S. Code, tit. 49, § 1472).
Assuming a frisk and a search may have their legal limitations under the foregoing act so far as they apply to potential passengers intending to board an airplane, nevertheless, I am of the opinion that the law cuts a wider swath in its interpretation of search and seizure with regard to a public place such as, for instance, an airport; and so, an accidental discovery of contraband, being a criminal violation of the law, becomes effective as the basis of a criminal prosecution. In the borrowed language taken from People v. Rontey (4 N. Y. S. 235, 238, affd. 117 N. Y. 624), I say, “ Public safety must be regarded as superior to any private rights ”. That should be paramount, more so, at an airport, because of the dangerous condition existing today in such a public place.
Comparing the situation here with that in People v. Capra (17 N Y 2d 670), I find a similarity where the court held therein that an accidental finding of heroin in defendant’s clothing as the result of a search did not constitute an illegal act. (Cf., also, People v. Hoffman, 24 A D 2d 497.)
Also to be noted is that, in demonstrating reasonable cause, with respect to a motion to suppress, the prosecution is not required to supply evidence of guilt to the degree required at a trial. (People v. Prisco, 61 Misc 2d 730.)
The sum and substance of my view on the question involved is that the People were and still are authorized to prosecute defendant for the possession of this contraband in violation of the law.
As a parting notation to this discussion, I am inclined to observe that the inference from the fact that defendant had purchased the privilege of becoming a passenger with knowl *579 edge of the disturbing conditions relative to airplane traveling, should be that he had to expect to be frisked and searched, if and when necessary, as the occasion might arise according to the judgment of the customs officials.
Suppression is denied.